UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEON ANDERSON,

                      Petitioner,          **No. 6:15-cv-06687-MAT**
          -vs-                             **DECISION AND ORDER**

HAROLD GRAHAM, Superintendent of
Auburn Correctional Facility,

                      Respondent.
_____

## I. Introduction

Keon Anderson ("Petitioner") brings this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 ("Section 2254"), alleging that he is being held in custody in violation of his constitutional right of access to the courts. Petitioner is incarcerated as the result of a judgment entered on July 1, 2008, in New York State Supreme Court, Monroe County (Geraci, J.), following a jury verdict convicting him of second-degree (felony) murder (N.Y. Penal Law § 125.25(3)) and two counts of first-degree robbery (Id., § 160.15 (4)). For the reasons discussed herein, Petitioner's request for a writ of habeas corpus is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

The judgment of conviction at issue in this petition stems from two robberies that took place in 2007 in the City of Rochester. On the night of November 22, 2007, Petitioner and three accomplices allegedly robbed the Golden Star Deli at 849 Jefferson Avenue. Three of the robbers were armed with guns, and one of them

pointed a gun at a deli employee's face. They took $3,000 before fleeing.

On December 3, 2007, Petitioner and two cohorts allegedly entered a grocery store at 1037 North Street and forced an employee, at gunpoint, to lie down on the floor. They stole money out of the cash register and also took cigars and cigarettes. When the store owner, who lived above the store, came downstairs and encountered them, one of the robbers shot and killed him. The three men then fled the store. One of the victims ran outside and watched the robbers head down North Street to Bernard Street. A K-9 team from the Rochester Police Department ("RPD") tracked their scent to the home of Janetta Stanback ("Stanback") on Bernard Street. After obtaining verbal consent from Stanback to enter and search the home, the K-9 team and several other RPD officers discovered Petitioner and his cohorts secreted in an attic crawlspace. After arresting all three men, the police searched the crawlspace and recovered cigar boxes, bags of cigarettes, jackets, 'do rags, knit gloves, and $401 in cash, as well as three handguns (a .45-caliber Bersa semi-automatic with an empty magazine; a .357-caliber revolver with one live round, two empty chambers, and three spent casings; and a fully loaded .22-caliber Ruger semi-automatic). Ballistics testing determined that the bullets and bullet jackets recovered from the crime scene, as well as the bullet recovered from the decedent's body, were fired from the .357-caliber and the

.45-caliber handguns. A print of the left middle finger of one Petitioner's cohorts was found on one of the cigar boxes. A print of the left index finger of one of the other victim's was found on another cigar box.

By Indictment Number 2007/1050A, a Monroe County grand jury charged Petitioner with second-degree murder and first-degree robbery in connection with the December 3, 2007 incident, and a second count of first-degree robbery in connection with the November 22, 2007 incident. Following a jury trial, Petitioner was convicted as charged and sentenced to an aggregate prison term of 50 years to life.[1] The Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division") affirmed the judgment of conviction, and the New York Court of Appeals denied leave to appeal. People v. Anderson, 113 A.D.3d 1102 (4th Dep't), lv. denied, 22 N.Y.3d 1196 (2014).

Petitioner filed a pro se application for a writ of error coram nobis in the Appellate Division, arguing that appellate counsel was ineffective because he failed to brief a claim that the lineup identification procedures conducted for the witnesses from the November 2007 robbery were unduly suggestive, and for failing

---

[1] With respect to the convictions based on the December 3, 2007 crimes, Petitioner was sentenced to an indeterminate prison term of 25 years to life on the murder count, and a concurrent determinate prison term of 25 years, plus 5 years of post-release supervision, on the first-degree robbery count. With regard to the convictions based on the November 22, 2007 incident, Petitioner was sentenced to a determinate prison term of 25 years, plus 5 years of post-release supervision, on the first-degree robbery count; that sentence was ordered to run consecutively to the sentences imposed for the December 3, 2007 convictions.

to brief a claim challenging the showup identification procedure that the police conducted on December 3, 2007, for one of the victims of the December 3, 2007 robbery. The Appellate Division summarily denied the application, and the New York Court of Appeals denied leave on May 19, 2016.

While his leave application was pending, Petitioner timely filed the instant petition, asserting the following grounds for relief: (1) the trial court abused its discretion in denying his motion to sever the third count of the indictment so that the events of each incident could be tried separately; (2) trial counsel was ineffective because he (a) failed to challenge a prospective juror, (b) failed to seek a missing witness charge based on the prosecution's failure to call her; (c) failed to call Stanback as a defense witness; and (3) appellate counsel was ineffective for failing to assert a claim that the witnesses to the November 2007 robbery should have been precluded from making an in-court identification of Petitioner because the lineup identification procedures were unduly suggestive.

In his answer, Respondent asserts that Petitioner's severance claim is unexhausted but must be deemed exhausted and procedurally default and, in any event, is not cognizable on habeas review and without merit. Respondent argues that the Appellate Division reasonably applied clearly established Supreme Court law in rejecting his remaining claims.

Petitioner did not file a traverse or a reply.

## III. **Preliminary Matters**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to Petitioner petition.  The Second Circuit has stated that "it is often appropriate in considering a habeas petition under the AEDPA for the federal court to go through two steps: first, the court determines what the correct interpretation of Supreme Court precedent is; second, if the state court's understanding or application of that precedent is determined to be erroneous, the federal court must still ask whether that error was a reasonable one." Kruelski v. Connecticut Superior Court for Judicial Dist. of Danbury, 316 F.3d 103, 106 (2d Cir.2003). Here, the Court need not determine whether Petitioner's claims were adjudicated on the merits by the state courts, thereby triggering AEDPA review, because his claims fail even if the Court applies the less deferential, pre-AEDPA standard. Messiah v. Duncan, 435 F.3d 186, 197 (2d Cir. 2006).

Furthermore, the Court declines to resolve the issues raised by Respondent's assertion of the defenses of non-exhaustion and procedural default, and instead proceeds directly to consideration of the merits of Petitioner's claims. See Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (stating that bypassing procedural questions to reach the merits of a habeas petition is justified "if the [underlying issues] are easily resolvable against the habeas

petitioner, whereas the procedural bar issue involved complicated issues of state law").

## IV. Discussion

### A. Erroneous Denial of Severance Motion (Petitioner's Ground I)

On direct appeal, Petitioner argued that the trial court abused its discretion in denying his motion to sever the third count of the indictment. The Appellate Division rejected this contention, finding that the trial court "did not abuse its discretion in denying his motion seeking to sever the November 22, 2007 robbery count, i.e., count three, from the December 3, 2007 felony murder and robbery counts, i.e., counts one and two[.]" People v. Anderson, 977 N.Y.S.2d at 550. The Appellate Division explained that the "December 3, 2007 felony murder and robbery counts were joinable pursuant to [New York Criminal Procedure Law ("CPL")] 200.20 (2)(a)," Anderson, 977 N.Y.S.2d at 550, which provides that "offenses are joinable when they are based on the same act or criminal transaction." N.Y. CRIM. PROC. LAW § 200.20(2)(a). Furthermore, the "two robbery counts involving different criminal transactions were joinable pursuant to CPL 200.20(2)(c)[,]" 977 N.Y.S.2d at 550, which provides that offenses are joinable when, even though they are based on different criminal transactions, "such offenses are defined by the same or similar statutory provisions and consequently are the same or similar in law." N.Y. CRIM. PROC. LAW § 200.20(2)(c). Therefore, the Appellate

Division concluded, the November 22, 2007 robbery count and the December 3, 2007 felony murder and robbery counts were "joinable under the 'chain of joinder' rule[.]" Anderson, 977 N.Y.S.2d at 550 (citing N.Y. CRIM. PROC. LAW § 200.20(2)(d) (stating that offenses are joinable when "each is so joinable with a third offense contained in the indictment[;] [i]n such case, each of the three offenses may properly be joined not only with each of the other two but also with any further offense joinable with either of the other two, and the chain of joinder may be further extended accordingly")). The Appellate Division further held that Petitioner "failed to meet his burden of submitting sufficient evidence of prejudice from the joinder to establish good cause to sever[.]" Id. (citations omitted).

Joinder "has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial." Herring v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993). "[T]here is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively," but the Supreme Court has "explicitly accepted that this type of prejudicial effect is acknowledged to inhere in criminal practice," and has "justified [it] on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person . . . in the same trial is a valid governmental interest."

Id. (quoting Spencer v. Texas, 385 U.S. 554, 562 (1967)). Thus, "[i]mproper joinder of charges against a defendant does not, in itself, amount to a constitutional violation." McKinnon v. Sup't, Great Meadow Corr. Fac., 422 F. App'x 69, 72 (2d Cir. 2011) (unpublished opn.) (citing United States v. Lane, 474 U.S. 438, 446 n. 8 (1986)). In other words, "misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." Lane, 474 U.S. at 446 n. 8.

Here, as the Appellate Division correctly found, joinder was proper as a matter of New York State statutory law. With regard to prejudice, appellate counsel argued that the prosecution was given the opportunity to convict Petitioner based on the similarities of the three counts, and to use those similarities to bolster the case regarding the December 2007 robberies—which was based on circumstantial evidence—with direct evidence from the November 2007 incident, in which Petitioner was identified as one of the perpetrators. The Appellate Division found that Petitioner had not demonstrated prejudice based on the similarities he identified between the crimes, i.e., both incidents involved multiple males wearing hoodies, who stole cash and "Dutch Masters" brand cigars. As Respondent argues, the fact that a group of men wearing hoodies stole cash and a common brand of cigars was not sufficiently distinct to create the concern that those similarities alone would

have caused the jury to convict Petitioner of the charges related to both crimes. "Where the jury learns of multiple crimes alleged to have been committed by a defendant, '[t]he defendants' interests are protected by limiting instructions. . . .'" McKinnon, 422 F. App'x at 72  (quoting Spencer v. Texas, 385 U.S. 554, 561 (1967); alteration and ellipsis in original)). Moreover, this Court "must presume that the jury followed these instructions[,]" Herring, 11 F.3d at 378, "unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." Id. (quotation and citations omitted).

In this case, the trial court charged the jury that the prosecution had to prove "beyond a reasonable doubt every element of the crime[s], including that [Petitioner] is the person who committed that crime." (Trial Minutes ("T.M.") at 1060). The trial court instructed the jury to "consider these crimes separately, consider the evidence as to each of these particular charges and all the elements of those charges independently." (Id. at 1076-77). Notably, Petitioner does not take issue with the limiting instructions provided by the trial judge. The Court finds that there is no reasonable probability that the jury was unable to comprehend the trial court's limiting instructions. Petitioner has failed to demonstrate that these instructions did not protect his

interests sufficiently. Accordingly, the Court concludes that no constitutional violation occurred by reason of the trial court's denial of severance.

**B.   Ineffective Assistance of Trial Counsel (Petitioner's Ground II)**

### 1.   Legal Standard

A lawyer's representation denies a defendant his right to counsel as guaranteed by the Sixth Amendment where it (1) "falls below an objective standard of reasonableness;" and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

### 2.   Trial Counsel's Alleged Errors

#### a.   Failure to Challenge a Juror

Petitioner reprises his claim, raised on direct appeal, that trial counsel was ineffective in failing to seek to remove a Prospective Juror 4 during voir dire on the basis that he could not be fair and impartial due to sympathy for the victims.

During voir dire, Prospective Juror 4 revealed he was a property manager and rented out storefronts to Arab store owners. He approached the bench and informed the trial court that he had heard about the shooting from one of his tenants, but he said he did not know any of the victims or the store owners; he just knew the store owners were upset. He affirmed that he did not form any

opinion based upon that action or anything that her heard as to what happened during the crimes "other than sadness" for the victim. The trial court asked him if he "[c]an . . . listen to the evidence in  this case and base your decision only on the evidence in this courtroom[,]" "[b]e fair to the prosecution," and "[b]e fair to the defendant." Juror Number Four definitively answered "[y]es" to each question. The prosecutor asked him if there was "anything about the stores [he] own[s] or association that would make [him] uncomfortable coming back with a verdict one way or the other." The prospective juror responded, "No, won't make me uncomfortable." However, when the prosecutor asked the same question in a slightly different way, Prospective Juror 4 said yes, and explained, "Well, I'd feel if my tenants now ask me about the situation and this person is somehow not found guilty, then I'll feel bad being in front of them day after day." The trial court asked if he thought it was going to play a role in his decision, and Prospective Juror 4 answered, "I don't think it will  play on my decision to sit on this case. It plays on me after the case --" At that point the trial judge refocused the prospective juror:

> The Court: The question is can you make a decision based upon the evidence here
> Prospective Juror 4 Yes, I can.
> The Court: -- and be fair to all the parties here?
> Prospective Juror 4: Yes, I can.

(See T.69-71).

The Appellate Division recognized that while at the outset of voir dire "the prospective juror made statements that raised concerns regarding his impartiality, upon further questioning he clarified his position by giving an unequivocal and credible assurance under oath that he would be able to render an impartial verdict if chosen to serve." Anderson, 977 N.Y.S.2d at 550 (citations omitted). Therefore, the Appellate Division "reject[ed] [Petitioner]'s . . . contention that defense counsel was ineffective in failing to seek to remove [him]." Id. This holding was correct as a matter of Federal law.

"Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. Trial counsel is "accorded particular deference when conducting voir dire[,]" and "[a]n attorney's actions during voir dire are considered to be matters of trial strategy." Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001) (citations omitted). To prevail upon a claim that trial counsel was ineffective in failing to remove or challenge a biased juror, a petitioner "'must show that the juror was actually biased against him.'" Hughes, 258 F.3d at 458 (quoting Goeders v. Hundley, 59 F.3d 73, 75 (8th Cir. 1995); (citing Smith v. Phillips, 455 U.S. 209, 215 (1982)). "Even when a juror expressly doubts his or her impartiality on voir dire, a finding of actual bias is not necessarily compelled." Mitchell v. Herbert, No. 01-CV-681, 2008 WL 342975, at *19 (W.D.N.Y. Feb. 6, 2008)

(citing <u>Hughes</u>, 258 F.3d at 458 ("The Supreme Court has upheld the impaneling of jurors who had doubted, or even disclaimed outright, their own impartiality on voir dire.") (citing <u>Patton v. Yount</u>, 467 U.S. 1025, 1029-30 (1984)).

Here, Petitioner has not established that Prospective Juror 4 was actually prejudiced against him. In addition, as the Appellate Division found, the potential juror gave unequivocal and unambiguous assurances that he could be fair to all parties and decide the case based on the evidence presented at trial. Indeed, Federal courts have upheld convictions where jurors were accused of partiality and their responses were "ambiguous and at times contradictory,"[2] <u>Patton</u>, 467 U.S. at 1038. Without a finding that Prospective Juror 4 was actually biased against Petitioner, prejudice under <u>Strickland</u> is not presumed, <u>Mitchell</u>, 2008 WL 342975, at *20 (citing <u>Hughes</u>, 258 F.3d at 463; other citation

---

[2]    In <u>Patton</u>, eight of the fourteen jurors in question admitted that, as a result of massive pretrial publicity regarding the crime, "at some time [prior to trial] they had formed an opinion as to [defendant's] guilt." 467 U.S. at 1029-30. In addition, one of the sworn jurors, whom defense counsel had unsuccessfully challenged for cause, stated at voir dire that he would have required evidence to change his mind about [defendant's] guilt." <u>Id.</u> at 1030-31. Although this juror stated that he could "enter the jury box with an open mind prepared to find your verdict on the evidence," he had first stated that "'[i]t would be rather difficult . . . to answer' whether he could enter the jury box presuming [defendant's] innocence." <u>Id.</u> at 1050 (Stevens, J., dissenting) (quotation omitted). The Supreme Court found that the trial court did not commit "manifest error" when finding that the jury as a whole was impartial. <u>Id.</u> at 1032. Furthermore, the Supreme Court found that with regard to the three jurors whom the petitioner unsuccessfully challenged for cause there was "fair support in the record for the state courts' conclusion that the jurors would be impartial," noting that the testimony of each was "ambiguous and at times contradictory." <u>Id.</u> at 1038-39.

omitted). The inability of Petitioner to show prejudice as a result of trial counsel's decision not to challenge Prospective Juror 4 means that his ineffective assistance claim cannot succeed. See Strickland, 466 U.S. at 697.

### b. Failure to Request Missing Witness Charge

Petitioner contends that trial counsel was ineffective in failing to make a timely request a missing witness jury charge regarding Stanback, the owner of the house in which he and his co-defendants were arrested on December 3, 2007. The record demonstrates that after summations but before the trial court gave its final jury instructions, trial counsel sought a missing witness charge as to Stanback. (See T.1051-54). The prosecutor opposed the request, arguing that Stanback was not under the prosecution's control, and noting that he had obtained recordings of recent phone calls between Petitioner and Stanback in which they declared their love for each other; one of these recordings was played for the jury. The prosecutor also stated that there was reason to believe that Stanback would commit perjury if called as a prosecution witness because she had recanted statements made in her sworn deposition. The prosecutor further expressed suspicion that Stanback was an accomplice in the December 2007 crimes and, as a consequence, she might assert her Fifth Amendment privilege against self-incrimination. Finally, the prosecutor argued, the defense

request was untimely. Finding merit to all of the prosecution's arguments, the trial court denied the request. (T.1054).

Even assuming _arguendo_ that trial counsel was objectively unreasonable in failing to make the charge request in a timely fashion, Petitioner's ineffective assistance claim nevertheless fails because he cannot demonstrate that he was prejudiced by counsel's performance. That is, there is no reasonable probability that the trial court would have granted the request, even if timely made, because it credited the prosecutor's multiple, alternative arguments. Furthermore, the trial court would have been correct, as a matter of state law, in denying a missing witness request as to Stanback.

In order to claim entitlement to the charge, Petitioner had to establish that Stanback was knowledgeable about a material issue in the case, that she would naturally be expected to provide noncumulative testimony favorable to the prosecution, and that she was available to the prosecution. People v. Gonzalez, 68 N.Y.2d 424, 427 (1986). Here, the prosecution's theory of the case was that Stanback was an accomplice to Petitioner and his cohorts in connection with the December 3, 2007 incident, and acted as a "scout" to determine the location of the store occupants immediately before the robbery. After the robbery, Petitioner and his accomplices fled to her house, and the police found them hidden in her attic. The prosecution also introduced recordings of phone

calls between Stanback and Petitioner, showing that they were in a romantic relationship and were in constant communication with each other. Given Stanback's amorous relationship with Petitioner, there was no reason to conclude that she was under the prosecution's control or would even give testimony favorable to the prosecution—assuming that she testified at all and did not invoke the Fifth Amendment.

### c. Failure to Call Stanback as a Defense Witness

Petitioner also faults trial counsel for failing to call Stanback as a defense witness. Courts in this Circuit have made clear that "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.), cert. denied, 484 U.S. 958 (1987). "Because of this inherently tactical nature, the decision not to call a particular witness generally should not be disturbed." United States v. DeJesus, 57 F. App'x 474, 478 (2d Cir. 2003) (citations omitted) (unpublished opn.).

As Respondent points out, this claim is inconsistent with his assertion that he was entitled to a missing witness charge as to Stanback. If trial counsel should have called Stanback to give testimony benefitting the defense, then she necessarily would not have been expected to give favorable testimony for the prosecution;

hence, Petitioner would not be entitled to a missing witness charge. Conversely, if Petitioner were entitled to a missing witness charge because Stanback would have been expected to give favorable testimony for the prosecution, then defense counsel would have had very valid strategic reasons *not* to present her as a defense witness.

In any event, Petitioner has not demonstrated that he was prejudiced by trial counsel's failure to call Stanback. Indeed, this claim is purely speculative because Petitioner has never hinted at what Stanback might be expected to say on the stand that would assist his defense.[3] "[P]etitioner may not merely allege that certain witnesses might have supplied relevant testimony, but must state exactly what testimony they would have supplied and how such testimony would have changed the result." Skinner v. Duncan, No. 01 CIV.6656 DAB AJP, 2003 WL 21386032, at *38 (S.D.N.Y. June 17, 2003) (citing Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990) ("To affirmatively prove prejudice [from counsel's failure to investigate], a petitioner ordinarily must show not only that the testimony of uncalled witnesses would have been favorable, but also that those witnesses would have testified at trial."); other citations and footnote omitted). Petitioner's ineffective

---

[3] At sentencing, Petitioner complained to the trial judge that he wanted his attorney to call Stanback as a witness even though she was saying things "that could possibly hurt" him. (T.1186). Petitioner's own statements suggest that trial counsel made a well-reasoned, strategic decision not to call Stanback.

assistance claim based on the failure to call Stanback must be denied because Petitioner has failed to indicate what she would have testified to and if she was willing to testify. <u>Accord</u>, <u>e.g.</u>, <u>Skinner</u>, 2003 WL 21386032, at *38.

### C. Ineffective Assistance of Appellate Counsel (Petitioner's Ground III)

#### 1. Legal Standard

The two-pronged <u>Strickland</u> standard also applies to claims of ineffective assistance of appellate counsel. <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000). To establish ineffective assistance of appellate counsel for failure to raise specific arguments, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir.), <u>cert.</u> <u>denied</u>, 513 U.S. 820 (1994). Rather, the process of "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues" is one of the hallmarks of effective appellate advocacy. <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983). To show deficient performance, a petitioner must demonstrate that appellate "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Mayo</u>, 13 F.3d at 533. To establish the prejudice component, a petitioner must show that "there was a 'reasonable

probability' that [his] claim would have been successful before the [state's highest court]." Id. at 534 (alterations in original).

## 2.   Appellate Counsel's Alleged Error

Petitioner renews his coram nobis claim that appellate counsel was ineffective for not arguing that the lineup procedures attended by two victims of the November 2007 robbery, Ramy Kassin ("Kassin") and Wadee Kassem ("Kassem"), were unduly suggestive because both witnesses previously had been shown two sets of photo arrays, both containing photos of Petitioner, but neither of them identified Petitioner from the photo arrays. Petitioner asserts that these witnesses' identifications of him during the subsequent lineup procedures, about 11 or 12 days after viewing the photo arrays, could have been based on their recognition of him from viewing multiple photo arrays[4] rather than their observation of him during the robbery.

"[Reliability] is the linchpin in determining the admissibility of identification testimony. . . ." Manson v. Brathwaite, 432 U.S. 98 (1977);. The first step is to determine

---

[4]
Kassem testified at the pre-trial hearing that he viewed a computer-generated photo array at the police station on November 22, 2007, and that policy officers came to the store to show him photo arrays on November 29, 2007, and November 30, 2007. Kassin testified that he viewed a photo array at the police station on November 22, 2007, and that the police showed him photographs at the store on November 29, 2007. He did not mention viewing a photo array on November 30, 2007. Both Kassem and Kassin viewed the line-up on December 4, 2007, at the Monroe County Jail, and picked Petitioner, who was the third person in the six-person line-up. Further, Kassin testified at trial that, in addition to the two photo arrays, he had also viewed 200 photographs in an effort to identify his assailants; Kassem testified that he had viewed about 144 photographs.

whether the array is impermissibly suggestive, that is, "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." <u>Neil v. Biggers</u>, 409 U.S. 188 (1972) (quotation omitted). Petitioner argues that because he was depicted in two photo arrays shown to the witnesses four days earlier, wearing different hairstyles in the various arrays, there was an increased likelihood that he would be identified in the lineup based on the inclusion of his photo in the arrays. However, "the law is clear that the police may use more than one identification procedure to identify suspects as long as the procedures utilized are fair and not suggestive." <u>Taylor v. Kuhlmann</u>, 36 F. Supp.2d 534, 551 (E.D.N.Y. 1999) (citing <u>People v. Carter</u>, 106 A.D.2d 654, 482 N.Y.S.2d 911 (2d Dep't 1984) (not improper to have witness view two photo arrays a few weeks before the lineup where procedures used were not suggestive)). Petitioner has never argued that the line-up viewed by Kassin and Kassem was suggestive. Furthermore, in cases where complainants were shown multiple photo arrays, the fact that different photographs of the defendant were used in each array was a factor weighing *against* undue suggestiveness. <u>See</u>, <u>e.g.</u>, <u>People v. Dickerson</u>, 66 A.D.3d 1371, 1372 (4th Dep't), 13 N.Y.3d 859 (2009) (multiple photo identification procedure, in which alleged victim identified defendant from a photo array after he had been shown a prior photo array several months earlier that also contained defendant's

photograph, was not unduly suggestive, although defendant's
photograph was the only photograph shown in both photo arrays,
where different photographs of defendant were used, the photographs
of defendant appeared in a different location in each photo array,
and there was a significant lapse of time between the presentations
of the photo arrays).

Even if the photographic arrays followed by the line-up
procedure were unduly suggestive, which this Court does not find to
be the case, the in-court identifications nevertheless were
independently reliable. Both Kassin and Kassem had independent
bases for identifying Petitioner, as they both testified at trial
that Petitioner had patronized the store on multiple occasions. In
addition, Kassem testified that Petitioner had been inside the
store mere hours before the robbery. See, e.g., Echevarria-Perez v.
Burge, 779 F. Supp.2d 326, 336-37 (W.D.N.Y. 2011) (in-court
identifications reliable where one witness recognized the driver of
the vehicle which struck and killed victim as someone whom he
already knew; other witness testified that she had known the
petition by his first name "for a long time"); Espinal v. Duncan,
No. 00 Civ. 4844(RWS), 2000 WL 1774960, at *3 (S.D.N.Y. Dec. 4,
2000) (in-court identification was valid despite use of single
photograph where trial court found an independent source of
reliability, "namely that [the witness] already knew [petitioner]
by first name as well as street name, . . . knew where [petitioner]

lived and the car he drove, and had seen him at least 20 times in the prior year") (internal quotation marks, brackets and citation omitted); People v. Rodriguez, 79 N.Y.2d 445, 449-50 (1992) (in-court identifications may be admissible despite prior suggestive procedures if the witness knew the defendant). Finally, assuming arguendo there was suggestiveness in the pre-trial identification procedures used, any error caused by the subsequent admission of the identification testimony was harmless because there was additional evidence of Petitioner's identity. Specifically, an image of Petitioner during the robbery was captured by the store's video surveillance system, and a police deputy who had known Petitioner for years identified him as the person in the surveillance video. See, e.g., United States v. Concepcion, 983 F.2d 369, 379-80 (2d Cir. 1992) (erroneous admission of identification testimony by witness whose pretrial identifications had not been sufficiently reliable was harmless beyond reasonable doubt; there was overwhelming evidence that defendant had shot and killed victim, including identifications by other witnesses).

Because there is no reasonable probability Petitioner's suggestive identification claim would have been successful, either as a matter of New York State or Federal law, Petitioner cannot show that he was prejudiced by appellate counsel's omission of it from the appellate brief. Likewise, because it was not demonstrably

stronger than the claims appellate counsel did raise in his brief, Petitioner cannot show that appellate counsel's decision not to include it was objectively unreasonable.

**IV.  Conclusion**

The application for a writ of habeas corpus is denied, and the petition is dismissed. Because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    March 22, 2018
          Rochester, New York